ST. LOUIS SOUTHWESTERN RY. CO. OF
TEXAS et al. v. THOMPSON et al.
(No. 1699.)

(Court of Civil Appeals of Texas. Texarkana.
Feb. 9, 1917. Rehearing Denied
Feb. 22, 1917.)

1. BENEFICIAL ASSOCIATIONS ⊙⟳10(7) — EX-
PULSION OF MEMBERS—CIVIL LIABILITY.

Recovery can be had as for procuring wrong-
ful expulsion of a member from an order where,
though it was nominally placed on a valid
ground, a violation of his obligation as a mem-
ber, those voting therefor did so in bad faith,
not believing him guilty.

[Ed. Note.—For other cases, see Beneficial
Associations, Cent. Dig. § 20.]

2. TRIAL ⊙⟳352(5) — SPECIAL ISSUES — AS-
SUMPTION OF FACT.

A question which, after defining exemplary
damages, asks the jury, bearing in mind such
explanation, to state what sum, if any, they de-
termine should be awarded as exemplary dam-
ages, does not assume that plaintiff is entitled
to recover exemplary damages.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 841.]

3. APPEAL AND ERROR ⊙⟳1099(10)—REVIEW—
AMOUNT OF RECOVERY—FORMER APPEAL.

Contention that award of punitive damages
is excessive should not be sustained, a greater
amount having, on a prior appeal, been held not
excessive.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 4379.]

4. DAMAGES ⊙⟳94 — EXEMPLARY DAMAGES
—MOTIVES OF JURY.

It cannot be said that improper motives
moved the jury in finding $1,250 exemplary dam-
ages against the corporate defendant, while
finding only $50 against each of the individual
defendants, they being entitled under the evi-
dence to find the corporation induced the in-
dividuals to act, and so was more blamable.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 216, 218, 219, 221.]

5. ASSOCIATIONS ⊙⟳20(2)—ACTIONS—PARTIES.

By express provision of Vernon's Sayles'
Ann. Civ. St. 1914, art. 6149, an unincorporat-
ed association doing business in the state may
be sued in its name, without making its mem-
bers parties.

[Ed. Note.—For other cases, see Associations,
Cent. Dig. §§ 37–40.]

6. APPEAL AND ERROR ⊙⟳232(1)—PRESERVA-
TION OF GROUNDS OF REVIEW—REFUSAL OF
PEREMPTORY INSTRUCTIONS.

Refusal of a requested peremptory instruc-
tion will be reviewed only on the ground on
which it was requested.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 1368, 1430; Trial, Cent.
Dig. § 691.]

Appeal from District Court, Smith Coun-
ty; R. M. Smith, Judge.

Action by W. Z. Thompson against the St.
Louis Southwestern Railway Company of
Texas and others. From a judgment for
plaintiff, certain defendants appeal. Af-
firmed.

This is the third appeal of this cause. The
pleadings of Thompson, the plaintiff below,
were the same as they were on the second
trial, reported in 108 S. W. 453, and 102 Tex.

89, 113 S. W. 144, 19 Ann. Cas. 1250. The
pleadings of the other parties were not ma-
terially different, so far as they are of im-
portance in disposing of the contentions
made on this appeal; nor was the testimony
on the last trial materially different, so far
as it affects those contentions. A full state-
ment of the case is given in the opinions in
108 S. W. 453, above referred to, and Thomp-
son v. Grand International Brotherhood of
Locomotive Engineers, 41 Tex. Civ. App. 176,
91 S. W. 834. The statement below, copied
from the opinion of the Supreme Court in
102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1250,
which settled the more important of the ques-
tions of law presented by the assignments
on this appeal, and the statement following
it, together are believed to be a sufficient
statement of the case made by the record
now before us:

"Thompson instituted this suit in the district
court of Smith county against the St. Louis
Southwestern Railway Company of Texas, the
Grand International Brotherhood of Locomotive
Engineers, J. J. Bartholomew, W. H. McCorkle,
G. L. McCardell, M. M. Bartholomew and R.
J. McCool, to recover of them damages occa-
sioned to the plaintiff by wrongfully and ma-
liciously causing him to be expelled from the
said order of the Brotherhood of Locomotive
Engineers. There was a division of the order
of the Brotherhood of Locomotive Engineers at
Tyler, No. 201, and the plaintiff, Thompson,
and the different individual defendants were
each and all members of that division. The
petition charged that the railway company act-
ing by Green, a general officer of that corpora-
tion, J. J. Bartholomew, W. H. McCorkle, G.
L. McCardell, M. M. Bartholomew and R. J.
McCool, entered into a conspiracy and combi-
nation whereby they agreed and undertook to
secure the expulsion of the plaintiff from the
said Brotherhood, and, in pursuance of that
confederation and conspiracy and to accom-
plish that purpose, the said individual defend-
ants made out, deposited and filed with the said
division No. 201 of the Brotherhood of Locomo-
tive Engineers at Tyler the following charges
against the plaintiff: 'Specification of charges.
For writing to Mrs. A. H. Pennyman and urg-
ing her to sue the Cotton Belt Railway for
the death of her husband. For going on the wit-
ness stand in the Bolton Case and testifying
against the Cotton Belt Railway Company
to the injury of the other brothers and causing
the Brotherhood at large to lose prestige with
the Cotton Belt Railway Company.' It is al-
leged that said charges were false and that
they were knowingly and maliciously made and
presented to the said division. Thereafter the
said division No. 201 of the said Brotherhood
notified the petitioner and placed him upon
trial on the said charges. It is alleged that the
prosecution of him in the division was malicious-
ly done by the said defendants, and that the
members of the said division had no reasonable
ground to believe that he was guilty of said
charges and did not believe that he was guilty
thereof, but that the said proceeding was prose-
cuted against him for the unlawful purpose of
deterring him from appearing when summoned
as a witness in cases against the Cotton Belt
Railway. Upon a trial had before the said di-
vision the charges were sustained and the peti-
tioner was expelled therefrom. Petitioner ap-
pealed from the said decision to P. M. Arthur,
Grand Chief Engineer, who, notwithstanding
the unjust and false charges made against the
plaintiff, sustained the action of said division.

⊙⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

And, in pursuance of said expulsion, the plaintiff's name was printed as one who had been expelled from the said order in a journal of the said International Brotherhood and was circulated largely in the United States, Canada and Mexico, greatly to his humiliation and detriment. The plaintiff in his petition alleged with particularity the different elements of injury that he sustained by reason of the action of said division procured by the malicious and willful conspiracy and combination of the defendants; among other things he alleged that he held a policy of insurance in the said order for $1,500 upon which he had paid large sums for a number of years, which by the rules of the order was forfeited upon his expulsion and as consequence thereof. He also alleged that as a member of said order he was entitled to and had a traveling card which entitled him to ride free upon the trains of the different railroads in the United States, Canada and Mexico, which was also forfeited as a consequence of said expulsion. He alleged mental suffering and humiliation by reason of the unjust and unlawful action of the said defendants."

The suit, so far as it was against M. M. Bartholomew and R. J. McCool, was dismissed before the last trial, they having died. On that trial special issues were submitted to the jury. Those issues and the findings on same, none of which is attacked as without the support of testimony, are shown by an excerpt from the record as follows:

"Question No. 1: The specifications of charges against plaintiff were: First, for writing to Mrs. A. H. Pennyman and urging her to sue the Cotton Belt Railway for the death of her husband; second, for going on the witness stand in the Bolton Case and testifying against the Cotton Belt Railway to the injury of other brothers and causing the brotherhood at large to lose prestige with the Cotton Belt Railway. You will in answer to this question state whether Thompson was expelled on one or both grounds in the specification; if upon only one, state which one.

"Answer to Question No. 1: Both Grounds.

"Question No. 2: If you have answered question one by saying that the local division No. 201 expelled plaintiff upon the second ground in the specification you need not answer this question; but if you answer said question by stating that said division expelled plaintiff upon either the first ground or upon both grounds, then you will answer the following: Has plaintiff shown by preponderance of the evidence that the members of division 201 of the Brotherhood of Locomotive Engineers who tried and expelled him voted to expel him, not in good faith and not in fairness toward him and not believing and holding that the signing with Nichols of the letter to Mrs. Pennyman, under the circumstances attending it, constituted unbecoming conduct or a violation of his obligation under the constitution and laws of the order?

"Answer to Question No. 2: Yes.

"Question No. 3: If you have answered question No. 1 that the local division expelled Thompson on the second ground in the specification of charges, or if you have answered that they expelled him on the first or both grounds, and have answered question 2 in the affirmative, then you will answer: Did J. J. Bartholomew, W. H. McCorkle and G. L. McCardle, or either of them, by act or word, procure or aid in procuring such expulsion (if you answer in the affirmative, then name the one or ones who did so)?

"Answer to Question No. 3: Yes; J. J. Bartholomew, W. H. McCorkle, and G. L. McCardle.

"Question No. 4: Has Thompson shown, by a preponderance of the evidence, that the defend-

ant St. Louis Southwestern Railway Company of Texas, acting through W. E. Green, its second vice president and general superintendent, conspire with one or more of the members of division 201 of the Brotherhood of Locomotive Engineers to have Thompson expelled from the order? (If you answer this question in the affirmative, then give the name or names of the member or members of said division with whom said Green so conspired.)

"Answer to Question No. 4: Yes; J. J. Bartholomew, O. M. Harrington, and Sam Meyers.

"Question No. 5: If you have in answer to question 1 stated that plaintiff was expelled on the second ground in the specification of charges, or upon the first, or upon both, and have answered question 2 in the affirmative, then ascertain from the evidence and state in answer to this question what sum of cash money will fairly compensate plaintiff for such damages, if any, as you may find from the evidence proximately resulted to him from the loss of the traveling card, insurance policy and such other benefits, if any, as inured to plaintiff by reason of his membership in the order, and that will fairly and reasonably compensate him for such humiliation, if any, and mental suffering, if any, and loss and injury, if any, to his character and reputation as you find proximately flowed to him from the publication of his expulsion in the journal.

"Answer to Question No. 5: Five Hundred Dollars ($500.00).

"Question No. 6: Exemplary damages are damages allowed by way of punishment for a wrongful act done by one with malice, and by "malice" is meant a wrongful act, done intentionally, without just cause or excuse, in violation of the rights of another. Now, bearing in mind this explanation, in answer to this question you will state: What sum of money (if any) in your sound judgment you determine should be awarded plaintiff as exemplary damages? (And also state against which defendant or defendants, if any, such damages should be awarded, naming the defendant or defendants and the amount you award against such defendant or defendants.)

"Answer to Question No. 6: Grand International Brotherhood of Locomotive Engineers two hundred fifty dollars ($250.00); St. Louis Southwestern Railway Company twelve hundred fifty dollars ($1,250.00); J. J. Bartholomew fifty dollars ($50.00); W. H. McCorkle fifty dollars ($50.00); and G. L. McCardle fifty dollars ($50.00).

"Also following question propounded by the attorneys for defendants:

"Did P. M. Arthur, Grand Chief Engineer, in acting on the appeal of W. Z. Thompson, do so in good faith and upon the record and letters written by Thompson and Bartholomew?

"Answer: No."

The judgment rendered on the finding was in favor of Thompson against the Grand International Brotherhood, the St. Louis Southwestern Railway Company of Texas, J. J. Bartholomew, W. H. McCorkle, and G. L. McCardell for the sum of $500 as actual damages, and in favor of Thompson for $1,650 as exemplary damages, which was apportioned as follows: Against the Brotherhood $250; against the railway company $1,250; and against Bartholomew, McCorkle, and McCardell $50 each.

Marsh & McIlwaine, J. A. Bulloch, and J. W. Fitzgerald, all of Tyler, E. B. Perkins and Ben C. Cain, both of Dallas, and Daniel Upthegrove, of St. Louis, Mo., for ap-

pellants. Simpson, Lasseter & Gentry, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] Of course it is not contended that the Brotherhood had either a right or power to expel appellee for testifying as a witness in the Bolton Case. On the contrary, appellants concede, as we understand them, that if appellee was expelled on that ground alone the action of the Brotherhood was a nullity.

The contention is that the court erred in rendering judgment against appellant because the jury found that appellee was not expelled on that ground alone, but also on the ground that he signed with Nichols the letter the latter wrote to Mrs. Pennyman. If the finding of the jury that appellee was expelled for signing the Pennyman letter should alone be looked to in determining the contention, it should be sustained, notwithstanding it appears therefrom that appellee also was expelled for testifying as a witness in the Bolton Case. For the Supreme Court, on a former appeal of the cause, reported in 102 Tex. 98, 113 S. W. 147, 19 Ann. Cas. 1250, ruled that if the Brotherhood

"in good faith fairly and honestly passed upon the testimony submitted to them and found Thompson guilty of violating his obligation, or the constitution and laws of the order, then their action would be final and conclusive of the matter, and the plaintiff could not recover in this case because of his expulsion from that order, nor for any of the consequences flowing from it, although they may have found him guilty on the second charge also."

But, in determining the contention, that finding must be considered in connection with the one following it, to wit, that the members of the Brotherhood who voted to expel appellee did not do so in good faith and in fairness toward him,

"believing and holding that the signing with Nichols of the letter to Mrs. Pennyman, under the circumstances attending it, constituted unbecoming conduct or a violation of the obligation under the constitution and laws of the order."

The finding just set out means, we think, that the members who voted to expel appellee for signing the Pennyman letter "believed" and "held," when they did so, that his act in signing it was not such "unbecoming conduct" or such "a violation of his obligation" as a member of the order as authorized his expulsion. If they so "believed" and "held," then it is plain that they did not in fact expel him for that, but merely used it as a pretext to conceal the real ground on which they expelled him. The two findings construed together we think bring the case within a rule which the Supreme Court, on the former appeal above referred to, stated as follows:

"If, * * * the members of that order did not act in good faith and did not exercise their honest judgment in coming to the conclusion that by writing the Pennyman letter Thompson was guilty of a violation of his obligation or the constitution and laws of the order, but used it as a pretext by which to expel him on account of the second charge made against him, then their action would be void and Thompson would be entitled to recover."

[2] We do not agree that the court, in the sixth question submitted to the jury, assumed that appellee was entitled to a recovery against appellants of exemplary damages. Reasonably, the jury must have understood that before they were authorized to award appellee such damages they must find that he was wrongfully expelled from the Brotherhood and without just cause or excuse for his expulsion.

[3, 4] On a former appeal of the cause it was insisted that the judgment against appellant St. Louis Southwestern Railway Company, in so far as it was for exemplary damages, was grossly excessive. On that appeal the judgment against said appellant was for $500 as actual damages, as it is on this appeal, and for $2,000 as exemplary damages, while on this one it is for only $1,250 as exemplary damages. On said former appeal it was held by the Court of Civil Appeals that the judgment was not excessive as claimed. 108 S. W. 457. The judgment for exemplary damages against said appellant on this appeal being for $750 less than the sum held on the former appeal not to be excessive, we do not think the contention presented by the sixth assignment that it is for an excessive amount as exemplary damages should be sustained. The argument advanced in support of that assignment, that the finding in appellee's favor against each of the individuals sued was for the sum of only $50 as exemplary damages showed that the jury was moved by improper motives to find the sum they did against the appellant railway company, is not believed to be tenable. The jury might have believed from the testimony that the course pursued by appellant through its manager Green induced the individual appellants to act as they did, and therefore that it was more blamable than they were for the wrong done appellee.

[5, 6] Appellant Grand International Brotherhood requested the court to peremptorily charge the jury to find in its favor, on the ground that it was

"not a corporation, joint-stock association or partnership, but was a voluntary association or society composed of individuals not made parties to this suit,"

and complains of the refusal of the court to give the requested charge. It appeared that said appellant was an unincorporated association doing business in this state through its divisions, one of which was the division from which appellee was expelled. As the statute (article 6149, Vernon's Statutes) authorized a suit to be maintained in the courts of this state against such an association, it is clear that the court did not err when he refused on the ground assigned to instruct the jury as requested. We need not inquire whether said appellant was entitled

on other grounds to have the jury so instructed. San Antonio Traction Co. v. Emerson, 152 S. W. 468.

The judgment is affirmed.